**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

DAVID SPINAZZOLA,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 19-CV-165-GKF-FHM

## OPINION AND ORDER

Before the court is the Motion to Dismiss of defendant United States of America. [Doc. 6]. For the reasons set forth below, the motion is granted in part as to plaintiff's medical negligence claims. Plaintiff's remaining negligent hiring and supervision claims are dismissed sua sponte for lack of subject matter jurisdiction.

### I. Background

This lawsuit arises out of the alleged failure of plaintiff's physicians to inform him of and treat a pancreatic tumor that was first identified in September 2016. The complaint contains the following allegations.[1] Plaintiff David Spinazzola is a veteran of the United States Air Force who served from 1971 to 1976. [Doc. 2, p. 2 ¶ 8]. In December 2015, Mr. Spinazzola sought treatment for abdominal discomfort at the Ernest Childers Department of Veterans Affairs Outpatient Clinic ("Childers VA") in Tulsa, Oklahoma. [*Id.*, ¶ 10]. Mr. Spinazzola's gastroenterologist performed a physical examination and ordered an ultrasound. [*Id.*, ¶¶ 10-11]. Mr. Spinazzola was told that the results of the abdominal ultrasound were negative. [*Id.*, ¶ 12].

---

[1] In its consideration of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the [plaintiff]." *Garling v. United States Environmental Protection Agency*, 849 F.3d 1289, 1292 (10th Cir. 2017) (citations omitted).

Several months later, Mr. Spinazzola reported to Jodie Popp, a Physician's Assistant at the Childers VA, that his abdominal discomfort continued. [*Id.*, pp. 2-3 ¶¶ 13-14]. Ms. Popp ordered an abdominal C.T. scan, which was performed on September 15, 2016. [*Id.*, p. 3 ¶¶ 14, 16]. A radiologist reviewed the C.T. scan, determined that a tumor was growing on Mr. Spinazzola's pancreas, and concluded that immediate follow-up was needed. [*Id.*, ¶ 17]. Ms. Popp did not report the results of the C.T. scan to Mr. Spinazzola, nor did she follow-up with Mr. Spinazzola on a course of treatment. [*Id.*, ¶¶ 18-19]. "Mr. Spinazzola, believing the results of the C.T. scan were negative based on the failure of the V.A. to notify him of a positive result, continued to suffer severe symptoms of the tumor growing in his abdomen, including pain, nausea, and weight loss." [*Id.*, ¶ 21].

Mr. Spinazzola finally learned of the tumor when his pulmonologist ordered a chest x-ray performed on May 5, 2017. [*Id.*, p. 4 ¶¶ 23-24]. The x-ray revealed a mass on Mr. Spinazzola's pancreas which was confirmed that same day by a second C.T. scan to be a tumor. [*Id.*, ¶ 24]. At a June 30, 2017 meeting, the VA allegedly "admitted they had failed to notify Mr. Spinazzola of the tumor on his pancreas after the September 2016 C.T. scan." [*Id.*, ¶ 26]. Mr. Spinazzola underwent surgery to remove the tumor on August 11, 2017. [*Id.*, ¶ 27]. Mr. Spinazzola alleges that he "suffered physical pain and suffering, mental anguish and emotional distress, lost earnings and wages, and will suffer additional damages moving forward as a result of the V.A.'s delay in treating the tumor first identified in September 2016." [*Id.*, ¶ 29].

Mr. Spinazzola filed this lawsuit on March 29, 2019 for (1) medical negligence, (2) negligent hiring, and (3) negligent supervision. [*Id.*, pp. 5-6 ¶¶ 30-46]. Defendant filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "for failure to state a claim upon which relief can be granted as Plaintiff's Complaint is time-barred." [Doc. 6, p. 1].

## II. Legal Standard

The Federal Tort Claims Act ("FTCA") "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *Lopez v. United States of America*, 823 F.3d 970, 975-76 (10th Cir. 2016) (quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)). Section 2401(b) of the FTCA "bars any tort claim against the United States unless it is presented to the appropriate federal agency within two years of the claim's accrual, and filed within six months after notice of denial of the claim by that agency." *In re Franklin Savings Corp.*, 385 F.3d 1279, 1287 (10th Cir. 2004) (citing 28 U.S.C. § 2401(b)). "Section 2401(b) is not a jurisdictional requirement." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015). Rather, "timeliness is an affirmative defense," and "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

Generally, "[a] 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading[s] are presented to and not excluded by the court.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(b)). "[C]onversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document, and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates." *Id.* at 1385. For that reason, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a

defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.* at 1384 (citing cases).

Such is the case here. The United States attached five exhibits to its motion, three of which the court may consider without treating the motion as one for summary judgment: plaintiff's Standard Form 95, Claim for Damage, Injury or Death ("SF-95") dated October 18, 2017 [Doc. 6-1]; (2) plaintiff's second SF-95 received December 12, 2018 [Doc. 6-4]; and (3) a letter from the VA dated January 3, 2019. [Doc. 6-5]. These documents are essential to show whether Mr. Spinazzola "has complied with and otherwise satisfied the prerequisites established under the [FTCA]." [*See* Doc. 2, pp. 1-2 ¶ 4 (referencing all three documents)]. Plaintiff does not dispute the contents or authenticity of these exhibits, attaching all three to his response brief. [*See* Docs. 8-1, 8-3, 8-4]. For these reasons, the three documents are not "outside the pleadings" for purposes of defendant's 12(b)(6) motion and the court may consider them without treating the motion to dismiss as one for summary judgment. *GFF Corp.*, 130 F.3d at 1385; *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) ("[I]f a defendant attaches to a 12(b)(6) motion materials referred to by the plaintiff and central to his claim, the court has discretion to consider such materials.").

### III. Analysis

Before an action may be brought against the United States for money damages for personal injury caused by the negligent act or omission of a government employee, plaintiffs "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). To that end, Mr. Spinazzola sent his first SF-95 to the VA in October 2017 alleging medical negligence:

> Mr. Spinazzola's treating physicians failed to inform him of, or treat, a pancreatic tumor after it was first identified in September of 2016. Mr. Spinazzola continued

in doctors' care for another year, which resulted in additional needless pain and suffering, before the tumor was ultimately identified. Doctors then performed a Pancreaticoduodenectomy. Doctors confirmed that the tumor grew approximately 1.5 additional centimeters from the time of the initial discovery until ultimately removing the tumor.

[Doc. 6-1, p. 1; *accord* Doc. 8-1, p. 1]. Mr. Spinazzola concedes that the VA informed plaintiff that his administrative tort claim was denied on May 1, 2018. [Doc. 8, p. 3 ("Defendant denied Mr. Spinazzola's claim related to vicarious liability on May 1, 2018.")]. Mr. Spinazzola sent a second SF-95 to the VA in December 2018. [*See* Doc. 6-4; *accord* Doc. 2, pp. 1-2 ¶ 4]. The second SF-95 contained the following allegations:

> The Muskogee VA finally ordered a CT Scan of Mr. Spinazzola's abdomen on September 15, 2016. The CT Scan showed a tumor growing on Mr. Spinazzola's pancreas that required immediate medical treatment. Despite this urgent finding, no person at the VA Medical Center told Mr. Spinazzola that the CT Scan had revealed a tumor. Further, no one at the VA Medical Center followed up with previously discussed medical care of Mr. Spinazzola's abdominal complaints.
>
> On June 30, 2017, Mr. Spinazzola was finally alerted that he had a tumor growing on his pancreas that would require surgical intervention. The tumor was revealed by a follow up CT Scan after a chest X-Ray looking for potential lung cancer had detected the mass in his abdomen. By the time the VA Medical Center alerted Mr. Spinazzola that he had a tumor growing on his pancreas, the tumor had grown in size, he had physically suffered for many months, [and] had been unable to maintain employment due to the abdominal symptoms.

[Doc. 6-4, p. 3; *accord* Doc. 8-3, p. 3]. Mr. Spinazzola also alleged that the VA had breached its duty of care to hire, supervise, and train its medical providers, which he contended caused him damages. [*Id.*]. On January 3, 2019, the VA informed Mr. Spinazzola by letter that it construed his second SF-95 as an untimely request for reconsideration of its May 2018 decision. "A request for reconsideration must be received within six (6) months from the date of denial. Because your correspondence was received more than six (6) months after the date of denial, your request was not timely filed." [Doc. 6-5, p. 1; *accord* Doc. 8-4, p. 1]. According to the letter, the VA took no action because it "no longer ha[d] jurisdiction" to do so. [*Id.*].

Defendant argues that, under the FTCA, Mr. Spinazzola was required to file his lawsuit in federal court within six months of the denial of his first administrative claim, or by November 1, 2018. [*Id.* at p. 7]. Because the Complaint was not filed until March 29, 2019, defendant argues, it is time-barred. [*Id.*]. Mr. Spinazzola raises two arguments in response. The court considers each in turn.

## A. The FTCA's Timeliness Requirements

Mr. Spinazzola first argues that the FTCA requires a complaint be filed either within six months of the administrative denial *or* within two years of the claim's accrual. [Doc. 8, p. 8-9]. Because he filed his Complaint within two years of being notified of the VA's mistake, he contends that the Complaint is timely in its entirety. [*Id.,* p. 9]. He argues that "[t]he plain language of the FTCA permits claims to be brought within two years or within six months of the denial even if the statute of limitations has expired (so long as the claim itself was timely made)." [*Id.*]. But Mr. Spinazzola does not point to any case law interpreting the FTCA in this way.

> Section 2401(b) provides:
>
> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The FTCA "provides that a tort claim against the United States 'shall be forever barred' unless [1] it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then [2] brought to federal court 'within six months' after the agency acts on the claim." *Kwai Fun Wong*, 135 S. Ct. at 1629 (quoting 28 U.S.C. § 2401(b)). Per the first clause, any tort claim against the United States will be barred unless claimants present their claim in writing to the appropriate *federal agency* within two years of the claim's accrual. *See Cannon v. United States*, 338 F.3d 1183 (10th Cir. 2003) (landowners' claims against the United States for failure to clean

up World War II weapons testing site was time-barred for failure to present their claims to the agency within 2 years of the claims' accrual). The second clause requires claimants to initiate action in *federal court* within six months of that agency's denial, or else the tort claim will be barred. *See Barnes v. United States*, 776 F.3d 1134, 1142-43 (10th Cir. 2015) (finding lawsuit filed more than six months after agency's formal denial of claim time-barred). Claimants must comply with both requirements in order to satisfy the limited conditions upon which the United States has consented to be sued. *See Lopez*, 823 F.3d at 976 ("This unequivocal waiver of immunity must be construed narrowly and the limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." (citation omitted)); *see also* 14 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3658 (4th ed. 2019) (Section 2401(b) "sets forth two deadlines.").

Mr. Spinazzola's argument to the contrary is unpersuasive. He cannot choose which prong of 28 U.S.C. § 2401(b) to satisfy—he must satisfy both. The question before the court is whether Mr. Spinazzola initiated this action "within six months . . . of notice of final denial of [his] claim by the agency to which it was presented." *See* 28 U.S.C. § 2401(b). The answer is unaffected by his timely "present[ation] in writing to the appropriate Federal agency within two years after such claim accrues." *See id.*

## B. The Scope of the Administrative Claim

Mr. Spinazzola next argues that, because the first SF-95 did not allege sufficient facts to put the VA on notice to investigate his negligent hiring and supervision claims, any deadline triggered by the first SF-95 does not extend to his negligent hiring and supervision claims. [Doc. 8, pp. 5-8]. He contends the deadline to file the Complaint on his negligent hiring and negligent supervision claims was 180 days from when he received the second VA letter. [*Id.*, p. 8]. In reply,

defendant argues that the plaintiff cannot "restart the clock" by filing a second administrative claim that is the functional equivalent of the first. [Doc. 9, pp. 3-4].

There is scant case law evaluating whether a successive administrative claim is the functional equivalent of the first. *See Roman-Cancel v. United States*, 613 F.3d 37, 42 (1st Cir. 2010) (noting the "few cases" considering the issue). What case law there is suggests that plaintiffs cannot avoid the timing limitations of the FTCA by submitting a new claim that is the functional equivalent of the first. *Roman-Cancel*, 613 F.3d at 42; *see also Pedro v. Smith*, No. 11-cv-02746-CBS, 2012 WL 4442805, at *9 (D. Colo. Sept. 26, 2012) ("Where a party files duplicative administrative claims, the court may regard the second claim as either an attempt to re-file the original claim or an attempt to have the agency reconsider its disposition of the original claim." (internal quotation marks and citation omitted)). "[H]onoring a re-filed claim would frustrate the goal of the FTCA's filing deadlines." *Roman-Cancel*, 613 F.3d at 42. The court agrees Mr. Spinazzola's claim for medical negligence is untimely, having been filed more than six months after the final administrative denial of that claim.[2] However, the same cannot be said for Mr. Spinazzola's negligent hiring and supervision claims.

---

[2] Mr. Spinazzola argues that, because he filed the Complaint within two years of his medical negligence claim's accrual, the court should apply equitable tolling. [Doc. 8, p. 10]. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012). Here, Mr. Spinazzola had six months from receipt of the first denial letter on May 1, 2018 to bring his medical negligence claim. He failed to do so and does not allege that any "extraordinary circumstances stood in his way." *See id.* He essentially asks the court to toll the statute of limitations due to his misunderstanding of § 2401(b)'s requirements. That basis is insufficient as Mr. Spinazzola had ample opportunity to file suit on his medical negligence claim. *See Barnes*, 776 F.3d at 1150-51 (refusing to grant equitable tolling where plaintiffs "had ample opportunity in which to timely file, but failed to do so").

Courts frequently consider the scope of administrative claims when evaluating whether the FTCA's exhaustion requirement has been satisfied. "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Lopez*, 823 F.3d at 976 (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). The Tenth Circuit has stated that a "claim" must feature two components: "(1) a written statement describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct, and (2) a request for a sum certain in damages." *Id.* "[T]he claim asserted encompasses any cause of action fairly implicit in the facts." *Id.* (internal quotation marks and citation omitted). Applying these principles, the Tenth Circuit in *United States v. Lopez* concluded that the facts alleged in the plaintiff's administrative claim, alleging medical negligence, "were not sufficient to encompass and give the government notice of his negligent credentialing and privileging claim."[3] *Id.* at 976-77. Even though the negligent credentialing and privileging claim required "proof that the plaintiff was injured by the negligent acts of the improperly credentialed and privileged physician . . . . such a claim also requires proof that the hospital/employer breached a legal duty by credentialing and privileging the physician." *Id.* at 977. Because nothing in the plaintiff's administrative claim "provided the government with notice that it needed to investigate whether

---

[3] The administrative claim filed by the plaintiff in *United States v. Lopez* stated:

> This is a claim for medical malpractice arising from substandard medical care provided to Leonard Lopez during a surgical procedure on March 5, 2010 at the VA Medical Center. During the left L5–S1 decompression/discectomy procedure, Glenn W. Kindt, M.D., and Samuel Waller, M.D., cut and removed part of a nerve. Dr. Kindt's and Dr. Waller's cutting and removal of this nerve was a breach of the standard of care and caused Mr. Lopez injuries, damages and losses. As a result of Dr. Kindt's and Dr. Waller's cutting and removal of the nerve from Mr. Lopez's body, he developed permanent injuries including CRPS Type II and exacerbation of his post-traumatic stress disorder.

*Lopez*, 823 F. 3d at 975.

the VA Hospital was negligent in credentialing and privileging [the physician]," the court

concluded his "administrative claim did not reasonably encompass his negligent credentialing and

privileging claim." *Id.* If the issue here were exhaustion, *Lopez* would compel the court to find

that plaintiff's first SF-95 was insufficient to put the VA on notice of his negligent hiring and

supervision claims. As another district court in the Tenth Circuit has explained:

> When an executive branch agency is presented with an administrative claim that—
> fairly read—centers entirely around the specific medical care rendered by specific
> personnel to a specific patient, *Lopez* forecloses the argument that such a claim
> implicitly encompasses ancillary claims having to do with how and why their
> employer hired, credentialed, trained, supervised, or staffed its personnel.

*Mark v. United States*, 224 F. Supp. 3d 1207, 1212 (D.N.M. 2016)). That rationale is important

here. Plaintiff's first SF-95 contains bare bones allegations regarding a specific medical claim, *i.e.*

that his "treating physicians failed to inform him of, or treat, a pancreatic tumor after it was first

identified in September 2016." [Doc. 6-1, p. 1]. As in *Mark* and *Lopez*, nothing in the first SF-95

provided the government sufficient notice of the relevant facts of his negligent supervision and

hiring claims. *See also Kikumura v. Osagie*, 461 F.3d 1269, 1302 (10th Cir. 2006), *overruled on*

*other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("the administrative tort claims

he filed with the BOP fail to mention the possibility that his injuries were caused by the inadequate

training and supervision of [prison] staff"). Consequently, as to plaintiff's negligent hiring and

supervision claims, the second SF-95 is not a duplicative filing.

Defendant argues that the "[p]laintiff fails to cite to any conduct or allegations in either the

second SF-95 or the Complaint that are unrelated to the allegations concerning the CT scan and

alleged medical malpractice." [Doc. 9, p. 4]. While plaintiff's claims for negligent hiring and

supervision may be factually related to his medical negligence claim, the defendant has presented

no authority for the proposition that they are so intertwined that the administrative denial of his

medical negligence claim operates to preclude his subsequent negligent hiring and supervision claims.[4]  *See* Mark, 224 F. Supp. 3d at 1212 ("*Lopez* forecloses the argument that [a medical negligence] claim implicitly encompasses ancillary claims having to do with how and why their employer hired . . . its personnel.").  The second SF-95 puts the government on notice of his negligent hiring and supervision claims whereas the first SF-95 did not.  So long as defendant submitted his written notice to the VA of his negligent hiring and supervision claims within two years of the claim's accrual (which is not disputed here), he is entitled to bring this action on those claims within six months of the agency's denial of those claims or after six months of agency inaction. *See* 28 U.S.C. §§ 2401(b), 2675(a).

The exhaustion requirement in § 2675(a) "establishes a date *before* which a claim cannot be filed, [and] § 2401(b)'s limitations period establishes the date *after* which any claim is barred." *Barnes*, 776 F.3d at 1139.  If the January 2019 letter constitutes "notice of final denial" under 28 U.S.C. § 2401(b), plaintiff satisfied § 2401(b)'s requirement by filing this lawsuit less than three months after receiving the letter.  However, if the letter does not constitute "notice of final denial," plaintiff's negligent hiring and supervision claims are premature because this suit was filed less

---

[4] Defendant, in support of its argument that the second SF-95 is duplicative of the first, emphasizes in a footnote that negligent hiring and supervision claims are "based on an employee's harm to a third party through employment." [Doc. 9, p. 4 n. 1 (quoting *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999)].  However, that case makes clear that, in Oklahoma, "[e]mployers may be held liable for negligence in hiring, supervising or retaining an employee.  In such instances, recovery is sought for the *employer's* negligence." *N.H.*, 998 P.2d at 600 (emphasis added).  While "[t]he claim is based on an employee's harm to a third party through employment. . . . [t]he critical element for recovery is the *employer's* prior knowledge of the servant's propensities to create the specific danger resulting in damage." *Id.* (emphasis added).  Thus, the elements of a claim for medical negligence and the elements of claims for either negligent supervision or hiring appear to be separate and distinct. *See id.* ("An employer is found liable, if—at the critical time of the tortious incident—, the employer had reason to believe that the person would create an undue risk of harm to others.  Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought.  In Oklahoma, the theory of recovery is available if vicarious liability is not established.").

than six months after the filing of plaintiff's second SF-95. *See* 28 U.S.C. § 2675(a). The VA characterized plaintiff's second SF-95 as a request for reconsideration and declined to take action on it, claiming they no longer had jurisdiction to do so. [*See* Doc. 6-5; *accord* Doc. 8-4]. Accordingly, the letter is better viewed as a notice of no action, rather than a notice of denial.

When an agency fails to take action, plaintiffs are not left without a remedy. "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a). As the Tenth Circuit has explained, "[i]n a nutshell, § 2675(a) articulates an administrative-exhaustion requirement that dictates when a potential plaintiff's opportunity to initiate a claim begins." *Barnes*, 776 F.3d at 1142. "To the extent that § 2675(a) permits a party to 'deem' an administrative claim denied, the statute makes clear that this constitutes a 'final denial' *only* for purposes of determining whether the administrative exhaustion requirement is satisfied, i.e. whether it is still too *early* to file a claim." *Id.* (emphasis original). Here, it was too early for plaintiff to file his medical supervision and hiring claims. The agency action was not "deemed denied" for purposes of § 2675 until June 12, 2019, six months after the agency received his second SF-95. [*See* Doc. 2, pp. 2-3 ¶ 4 (the second SF-95 was presented to the VA on December 12, 2018)]. Because the requirements of § 2675(a) are jurisdictional (*Lopez*, 823 F.3d at 976), the court lacks jurisdiction to hear plaintiff's negligent hiring and supervision claims.[5] Accordingly, the court must dismiss those claims without prejudice. *See Brereton v.*

---

[5] "[T]he FTCA's exhaustion requirement is jurisdictional, and the district court must consider its own jurisdiction even when it has not been challenged." *Webb v. Smith*, 632 F. App'x 957, 960 (10th Cir. 2015) (unpublished) (internal quotation marks and citation omitted)); *accord Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("It is well established that this Court must sua sponte satisfy itself of its power to adjudicate in every case." (internal quotation marks and citation omitted)).

*Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).  The court emphasizes that, because "[t]here is no limit on when a plaintiff may file a lawsuit predicated on a deemed denial," plaintiff is free to bring his negligent supervision and hiring claims in a new action now that the § 2675 "deemed denial" period has passed. *See Barnes*, 776 F.3d at 1140.

## IV.  Conclusion

WHEREFORE, defendant's Motion to Dismiss [Doc. 6] is GRANTED in part as to plaintiff's first claim for relief.  Plaintiff's second and third claims for relief are DISMISSED for lack of subject matter jurisdiction.

IT IS SO ORDERED this 15th day of November, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE